U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

JAN - 9 2015

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| LAKEISHA BETHLEY | CIVIL ACTION NO: 13-2939 |
| VERSUS | JUDGE DONALD E. WALTER |
| CHRISTUS HEALTH CENTRAL LOUISIANA | MAG. JUDGE KAREN L. HAYES |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. #12] filed on behalf of Defendant Christus Health Central Louisiana d/b/a St. Joseph's Nursing Home. Plaintiff, Lakeisha Bethley, opposes the motion [Doc. #16].[1] For the reasons that follow, the Motion for Summary Judgment is **GRANTED**.

### STATEMENT OF THE CASE

Plaintiff is an African-American female and a registered nurse, previously employed by Defendant Christus Health Central Louisiana d/b/a St. Joseph's Nursing Home ("St. Joseph's"). This case arises out of Plaintiff's June 27, 2011 termination from her position as the Assistant Director of Nursing ("ADON") at St. Joseph's. In her complaint, Plaintiff alleges that she was terminated "because she was African American (black) or a woman or both."[2] St. Joseph's contends that

---

[1] The instant motion was filed on September 22, 2014. A notice of motion setting was issued on September 23, 2014, and Plaintiff's opposition was due within twenty-one (21) days thereof. [Doc. #13]. On October 30, 2014, five weeks after the instant motion was filed, Plaintiff filed a motion for extension of time to respond. [Doc. #14]. The Court denied Plaintiff's request, noting that the deadline had already passed and that Plaintiff had failed to show good cause for failing to act because of excusable neglect. [Doc. #15]. Thereafter, Plaintiff's opposition was untimely filed on November 7, 2014.

[2] Doc. #1, p. 4, ¶12.

1

Plaintiff's termination followed an investigation into Plaintiff's behavior, which corroborated previous complaints by co-workers that Plaintiff regularly demonstrated rude, demeaning and dishonest behavior. St. Joseph's claims that Plaintiff was terminated upon her failure to take responsibility for her actions and her refusal to change the complained-of behavior. Plaintiff, on the other hand, claims that these reasons merely serve as a pretext for racial discrimination, alleging that complaints were made against other, white employees yet those employees were counseled rather than terminated.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was originally hired by St. Joseph's on December 29, 2010 as a Licensed Practical Nurse ("LPN"). On February 14, 2011, Plaintiff was promoted to Registered Nurse and thereafter assumed the ADON position, where Plaintiff remained until she was terminated. Each promotion included a pay raise. In her position as ADON, Plaintiff acted as the direct supervisor of the certified nursing assistants ("CNAs") and ward clerks and also helped with transportation.[3] Plaintiff's direct supervisor was the Director of Nursing ("DON"), Amie Robinson, who is a Caucasian female. Ms. Robinson's supervisor was St. Joseph's Administrator, Larry Tucker, who is a Caucasian male. Both Amie Robinson and Larry Tucker were involved in interviewing and hiring Plaintiff, as well as

---

[3] As further support for the job description of the ADON position, St. Joseph's points to the document marked as Exhibit 2 during Plaintiff's deposition and Bates-stamped as STJ0018 [Doc. #12-4, pp. 29-32; Doc. #12-4, p. 10, lines 19-23 (Plaintiff identifying document during deposition)]. Although Plaintiff appears to agree with St. Joseph's counsel during her deposition that this document is in fact a job description for the ADON position, the face of the document itself appears to reflect that it is a job description for the position of "Charge Nurse-Day Tour of Duty" which position is supervised by the "Director of Nursing and/or Assistant Director of Nursing[.]" The Court is further convinced that this document is a job description for a charge nurse, rather than the ADON position, by the fact that Plaintiff signed this document on the day she was hired by St. Joseph's as an LPN, on December 29, 2010. *See* Doc. #12-4, p. 32. As Plaintiff was not then being hired as the ADON, it would seem premature for Plaintiff to review and sign a written job description for the ADON position on that date.

promoting Plaintiff to the ADON position.

The entire duration of Plaintiff's employment with St. Joseph's extended only six months, from December 29, 2010 until June 27, 2011. St. Joseph's claims that Plaintiff's co-workers began complaining about Plaintiff's "rude and divisive behavior" shortly after she assumed the ADON position.[4] However, it was in early June 2011 that three anonymous complaints were made against Plaintiff via Christus Health's "Integrity Hotline," which ultimately led to Plaintiff's termination.[5] The hotline serves as part of Christus Health's problem resolution system and is an external telephone hotline that accepts calls about issues such as conflicts of interest, harassment and discrimination, quality of care and service issues, policy violations, etc.[6] In accordance with St. Joseph's policy, the hotline complaints made against Plaintiff were reported to Larry Tucker, who investigated the complaints and secured statements from the relevant employees regarding their interactions with Plaintiff.[7] These statements corroborated the hotline complaints and described occasions on which Plaintiff was rude to co-workers and/or provided incorrect information to her supervisor, Ms. Robinson, or to other employees.[8] A written statement was also taken from Plaintiff

---

[4] Doc. #12-6, p. 1, ¶7. Ms. Robinson describes having received reports from several nurses and CNAs regarding Plaintiff's rude and divisive behavior, one report that Plaintiff initiated an altercation with a co-worker about tuberculosis testing for the staff, and one report that Plaintiff was encouraging a nurse to make baseless complaints about another employee. *See* Doc. #12-6, pp. 3-12.

[5] Doc. #12-7, p. 1, ¶7; *see also* Doc. #12-5, pp. 10-21 (details of three anonymous complaints).

[6] Doc. #12-5, p. 1, ¶8, and p. 4.

[7] In his declaration, Larry Tucker names ten (10) employees from whom statements were obtained. Of those employees, five (5) were African-American females, four (4) were Caucasian females, and one (1) was a Caucasian male. *See* Doc. #12-7, p. 1, ¶8

[8] Doc. #12-7, pp. 3-33 (employee statements).

herself.[9] Mr. Tucker, along with Ms. Robinson, reviewed the employee statements with Wendy White, a Caucasian-Asian female employed by Christus Health as the Vice President of Human Resources.[10] All three individuals concluded that corrective action was needed to address the situation.[11]

Ms. White traveled to St. Joseph's on June 24, 2011 for the purpose of meeting with Plaintiff to review the allegations made against her and determine the appropriate course of action going forward; however, Plaintiff could not be located to participate in the meeting.[12] Thereafter, on June 27, 2011, a follow-up meeting was held, for which Ms. Robinson, Mr. Tucker and Plaintiff were physically present, and Ms. White participated by telephone.[13] During the meeting, Plaintiff was presented with the facts of the complaints made against her and given an opportunity to respond thereto. All three supervisory individuals present at the meeting claim that Plaintiff denied the allegations, failed to accept responsibility for her actions or the concerns raised regarding her behavior, and refused to commit to perform her work any differently or to accept that her behavior was causing problems, either intentionally or unintentionally.[14] At this point, Plaintiff was excused from the meeting while Ms. Robinson, Mr. Tucker, and Ms. White discussed how to proceed. It was determined that Plaintiff would be terminated, due to both the severity of the complaints and

---

[9] *Id.* at pp. 34-36 (Plaintiff's statement).

[10] *Id.* at pp. 1-2, ¶10; Doc. #12-6, p. 1, ¶9; Doc. #12-5, p. 1, ¶¶1-3, 13, 14.

[11] Doc. #12-5, p. 2, ¶14; Doc. #12-6, p. 1, ¶10; and Doc. #12-7, p. 2, ¶11.

[12] Doc. #12-5, p. 2, ¶15.

[13] Doc. #12-5, p. 2, ¶16; Doc. #12-6, p. 2, ¶11; and Doc. #12-7, p. 2, ¶12.

[14] Doc. #12-5, p. 2, ¶17; Doc. #12-6, p. 2, ¶12; and Doc. #12-7, p. 2, ¶13.

Plaintiff's refusal to take any corrective action to alter her behavior.[15] Plaintiff was asked to return to the meeting and was informed that she was being terminated and the reasons therefor.[16] An "Associate Performance Improvement Form" was completed and signed by Ms. Robinson and Mr. Tucker; however, Plaintiff refused to sign the form.[17]

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 21, 2011, in which she alleged that she was discriminated against on the basis of race and sex.[18] In the charge, Plaintiff claims that she was "told that [she] was discharged because there were three calls made to the Christus Hotline about [her]." On July 25, 2013, the EEOC issued a Dismissal and Notice of Rights to Plaintiff, and the instant litigation was commenced on October 25, 2013.[19]

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to pierce the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[15] Doc. #12-5, p. 2, ¶18; Doc. #12-6, p. 2, ¶13; and Doc. #12-7, p. 2, ¶14.

[16] Doc. #12-5, p. 2, ¶19; Doc. #12-6, p. 2, ¶14; and Doc. #12-7, p. 2, ¶15.

[17] Doc. #12-5, p. 2, ¶19, and p. 22 (associate performance improvement form). The Court notes that Amie Robinson appears to have first signed the form on June 24, 2011, the date that Wendy White first attempted to meet with Plaintiff. Then, the form was signed again by Amie Robinson, as a "witness," as well as by Larry Tucker, on June 27, 2011. The words "Refused to Sign" appear to the right of the "Associate's Signature" line, intended to be signed by Plaintiff.

[18] Doc. #12-4, p. 33.

[19] *Id.* at p. 34.

and the movant is entitled to judgment as a matter of law."[20] A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311. Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita*, 475 U.S. at 586-87. This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a

---

[20] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LEGAL ANALYSIS

Plaintiff alleges that St. Joseph's discriminated against her on the basis of gender and race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a). A plaintiff may prove employment discrimination through direct or circumstantial evidence. *See Laxton v. Gap Inc.*, 333 F.3d 573, 578 (5th Cir. 2003). As there is no direct evidence of discrimination in this case, Plaintiff's claims are evaluated using the evidentiary framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, Plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence by showing the following: (1) that she is a member of a protected class; (2) that she was qualified for the position at issue; (3) that she suffered an adverse employment action; and (4) that she was replaced by someone, or treated less favorably than similarly situated employees, outside of the protected class. *See Manning v. Chevron Chemical Co., LLC*, 332 F.3d

874, 881 (5th Cir. 2003); *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

If the plaintiff can present a prima facie case, the burden then shifts to the defendant-employer to rebut the plaintiff's case by demonstrating a "legitimate, nondiscriminatory justification for its actions." *Manning*, 332 F.3d at 881. If the defendant offers such a justification, the burden then shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination. *Id.* As shown below, Plaintiff has failed to present a prima facie case; therefore, the Court need go no further in its analysis.

It is undisputed that Plaintiff, an African-American female, is a member of a protected class. It is likewise beyond dispute that termination qualifies as an adverse employment action suffered by the Plaintiff. St. Joseph's contends that Plaintiff cannot establish a prima facie case because of the second and fourth elements, namely that Plaintiff was no longer qualified for the ADON position nor was she treated less favorably than, or replaced by, someone outside of her protected class. In support of its arguments against Plaintiff's qualification for the ADON position, St. Joseph's relies heavily on what purports to be the written job description thereof. As noted above, despite Plaintiff's admission during her deposition that the job description cited by St. Joseph's applies to the ADON position, the Court takes issue with that claim, at least at the summary judgment stage.[21] Specifically, the Court notes that, on its face, the document reflects that it is the job description for a "Charge Nurse - Day Tour of Duty," which position has as its supervisor the "Director of Nursing and/or Assistant Director of Nursing." Additionally, the

---

[21] The Court does note that, even if this written job description applies directly to a charge nurse rather than an ADON, this document does serve as circumstantial evidence that the included "essential functions" would also be essential functions of anyone serving as the ADON. *See* Doc. #12-4, pp. 29-32.

written job description was signed by Plaintiff upon St. Joseph's initial hire of Plaintiff on December 29, 2010, at which time Plaintiff was not being hired to fill the ADON position. Nonetheless, the Court agrees with St. Joseph's that Plaintiff has failed to establish a prima facie case due to her inability to show that she was replaced by someone, or treated less favorably than similarly situated employees, outside of the protected class.

Plaintiff's prima facie case turns here on whether she can establish that she was treated less favorably than similarly situated employees. Plaintiff's opposition to St. Joseph's motion for summary judgment states the following: "[C]omplaints were made against Ms. Amy [sic] Robinson, the Director of Nurses and Mr. Larry Tucker, and Brandon Brantley, including other employees but they were not terminated. They were just counseled. All these individuals are white."[22] The Fifth Circuit requires "that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009)(quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). "Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated." *Lee*, 574 F.3d at 259 (citation omitted). The Fifth Circuit in *Lee* explains:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the

---

[22] Doc. #16, p. 6.

adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Id.* at 260 (internal citations omitted).

Considering the Fifth Circuit's extensive guidance on this issue, it is clear to the Court that Plaintiff has failed to meet her burden of demonstrating that she was treated disparately from any other similarly situated employee of St. Joseph's. Plaintiff did not name any comparators in her original complaint; instead, she listed Robinson, Tucker and Brantley in her opposition to the instant motion.[23] As to the individuals named by Plaintiff, the Court is hard-pressed to find their positions or records to be even comparable to that of Plaintiff, much less "nearly identical." No comparator holds the same job or same responsibilities, and the comparators' violation histories are far from comparable to that of Plaintiff. As to Amie Robinson, Plaintiff has shown no evidence of a violation history, other than Ms. Robinson's own admission during her deposition that she was personally aware of one complaint made against her by a family.[24] As to Larry Tucker, St. Joseph's is aware of three hotline complaints made against Mr. Tucker, to wit: an April 4, 2008 complaint regarding a resident's Medicaid status; an August 22, 2008 complaint regarding Mr. Tucker's decision not to fill vacant nurse positions; and a December 12, 2009

---

[23] Plaintiff does allege in her complaint that she "was terminated and was subsequently replaced by a white female, who was less qualified." *See* Doc. #1, p. 3, ¶9. However, Plaintiff offers no proof to support this allegation other than Larry Tucker's confirmation during his deposition that a white woman was hired to fill the ADON position after Plaintiff was terminated. *See* Doc. #16-2, p. 22, line 25. In fact, Plaintiff admits in her own deposition that she has "[n]o facts to support" her allegation that she was replaced by a less qualified Caucasian female. *See* Doc. #12-4, p. 20, line 21.

[24] Doc. #16-2, p. 56.

complaint regarding Mr. Tucker's decision to remove telephones from the walls at St. Joseph's.[25] None of those complaints against Mr. Tucker were sustained.[26] As to Mr. Brantley, St. Joseph's is aware of two hotline complaints, to wit: an April 28, 2010 complaint that Mr. Brantley terminated an employee for refusing to sign a corrective document; and a November 11, 2011 complaint that Mr. Brantley did not deliver employee paychecks timely.[27] Neither of these complaints against Mr. Brantley were sustained.[28]

In contrast to the complaints outlined above, the complaints made against Plaintiff were much more severe in nature, divisive in consequence, and pervasive over the course of her short employment with St. Joseph's. By way of declarations from Amie Robinson, Larry Tucker, and Wendy White, as well as corroborating evidence of hotline complaints and employee statements provided during the investigation conducted by St. Joseph's, the Court is convinced that Plaintiff has not been subjected to unlawful discrimination. As such, Plaintiff has failed to establish a prima facie case of employment discrimination on the basis of race or gender, and St. Joseph's is entitled to judgment as a matter of law. Because Plaintiff has failed to establish a prima facie case of discrimination, the Court need not reach the subsequent steps of the *McDonnell Douglas* burden-shifting analysis. *See Nguyen v. Univ. of Texas School of Law*, 542 F. App'x 320, 325 (5th Cir. 2013).

---

[25] *See* Doc. #12-3, p. 10, citing Doc. #12-5, p. 2, ¶21.

[26] Doc. #12-5, p. 2, ¶22.

[27] *Id.* at ¶23, citing Doc. #12-5, pp. 33-38.

[28] *Id.* at p. 3, ¶24.

## CONCLUSION

For the reasons assigned herein, St. Joseph's Motion for Summary Judgment [Doc. #12] is hereby **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 9 day of January, 2015.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE